Mr. Chief Justice Shareey
delivered the opinion of the court.
This is an appeal from the circuit court of Lawrence county. A motion was made in that court by the appellee against the appellant, as sheriff, to compel the application of money raised by execution to the discharge of the appellee’s demand. Two executions, one in favor of Englehard & Silverberg, and the other in favor of John Tuttle against the property of John Boyett, were placed in the hands of the sheriff, which he levied on a negro girl on the 13th of April 1832, the same day that the execution in favor of Tuttle came to his hands. The one in favor of. *41 Englehard & Silverberg came to his hands on the 16th of April and was levied on a negro girl, I suppose the same previously levied upon. On the 23d of April the execution of the appellee against the same defendant was received by the sheriff, and Avas levied on sundry chattels, but not on the negro girl.
The three judgments on which these executions issued were rendered the second day of the April term 1832, by default, and there is nothing to show Avhich Avas first entered except a certified extrast from the notes on the judge’s docket, hy which it appears that the judgment in favor of William R. Boyett was some few minutes the oldest. The motion of the appellee Avas sustained, and the plaintiff ordered to pay the money in satisfaction of Boy-ett’s execution. The certified extract from the judge’s notes Avas used on the trial of the motion for the purpose of ascertaining the priority of judgment. It does not appear by whom these entries were made, or when made; this, however, is immaterial, as they were not proper evidence under any circumstances to determine the age of the judgment. The judge’s docket is not the judgment roll, nor are the notes of the judge any part of the record. Parol testimony would he much less objectionable than such loose me-moranda. The court, therefore, erred in receiving this testimony and placing that aside. The judgments are in all respects equal, being entered on the same day, there being nothing on the record to show a priority even if the fraction of a day could be inquired into, Avhich is doubted in 8 Johnson, 270.
The statute of 1824, page 105, sec. 12, makes all judgments liens on the property of the defendant from the time of entering the judgments. It has been contended that this provision was only intended to embrace a certain class of cases, but the language Avill not justify such a conclusion. It is true that the provision is found in an act which has reference to an object distinct from this provision, but it emphatically declares “ that in all cases the property of the defendant shall be bound and liable to any judgment that may be entered up,from the time-of entering such judgment.” The judgments, then, Avere each a lien on the defendant’s property from the second day of the April term, 1832; but it does not follow that each must be satisfied in proportion to the amount. The *42 claims to satisfaction must depend upon the manner in which the money was raised, which is moved to be applied.
Tuttle’s execution was levied the 13th day of April, and Engle-hard & Silverberg’s on the 16th, on a negro girl. This was before the execution of the appellee was placed in the hands of the sheriff. By the levy the property was changed; the sheriff became liable, and it amounted to satisfaction as far as the value of the property. The execution of the appellee was not instrumental in producing the money by the sale of the negress, if she was sold at all, and he cannot claim to have it appropriated to the payment of his demand.
■ On the authority in 8 Johnson’s Reports, Adams v. Dyer, the judgments being equal, the prior levy and sale gave the party levying a preference in his right to satisfaction. Also in 11 Johnson, 229, Watterman v. Hasldn, it is said that when the judgment levies are equal, he who first sues out his execution, and begins to execute before others, turns the scale in his favor, and gains a priority by his vigilance.
The judgment below must be reversed, and the sheriff is directed to apply the money, raised by the sale of the negress, to the satisfaction of the executions that were first levied on her.